IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
11 SEP 26 PM 1:01
CLERK-ALBUQUERQUE

BEATRICE I. LUCERO, }
 }
    Plaintiff, }
 }
vs. }  No. 11 cv 855 LAM
 }
STATE OF NEW MEXICO, }
NEW MEXICO DEPARTMENT }
OF TAXATION AND REVENUE }
a New Mexico governmental entity, }
 }  JURY DEMANDED
    Defendant. }

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE, NATIONAL ORIGIN, SEX, DISABILITY, RETALIATION, NEW MEXICO TORT CLAIMS, AND THE FAMILY MEDICAL LEAVE ACT

Plaintiff, Pro Se, alleges and states:

### JURISDICTION AND VENUE

1. This action is brought by Plaintiff to remedy discrimination and retaliation on the basis of race, national origin, sex, disability and retaliation in the terms, conditions and privileges of employment in violation of Title VII, Americans with Disabilities Act (ADA) and the New Mexico Human Rights Act (NMHRA). Plaintiff also brings claims under the Family Medical Leave Act, and New Mexico Tort Claims Act. Plaintiff seeks damages and other appropriate legal relief.

2. Plaintiff is a resident of Colorado. At all time relevant herein, Plaintiff was a resident of Santa Fe, New Mexico.

3. Upon information and belief, Defendants, State of New Mexico and the New Mexico Department of Taxation and Revenue are governmental agencies which are subject to suit under Title VII, the ADA and the NMHRA. Defendants are employers within the meaning of Title VII, the ADA and the NMHRA.

4. Venue is proper because all the unlawful practices complained of herein occurred within the District of New Mexico.

5. Plaintiff filed a timely charge of discrimination with the EEOC/New Mexico Human Rights Act and received her Notices of Right to Sue.

## ALLEGATIONS

6. On or about January of 2008, Plaintiff began working for Defendant Taxation and Revenue. Plaintiff was employed as a Senior Economist.

7. Plaintiff suffers from severe and persistent asthma and Multiple Chemical Sensitivities (MCS) that sometimes result in anaphylaxis. Either condition could result in sudden and instant death. Plaintiff's disabilities limit her major life activities such as breathing, balance, immune system, and ability to stay awake or think clearly.

8. In March of 2008, Plaintiff began making verbal requests for accommodations to her supervisors. Plaintiff requested that her interaction with office personnel who wore heavy perfumes, colognes and scented body lotions and hair spray be restricted or limited. Plaintiff also requested a microwave that was near her office be moved. Plaintiff also complained that her workstation was causing her chronic pain and requested an ergonomic workstation.

9. On August 19, 2008, Plaintiff and her daughter were involved in a motor vehicle accident that left them both with post traumatic stress disorder and severe chronic pain. After using all of her accrued leave, Plaintiff applied for and was ultimately approved for intermittent Family Medical Leave for herself and daughter. Medical restrictions included working no more than 40 hours per week and the provision of an ergonomic workstation.

10. Shortly after Plaintiff was injured in the motor vehicle accident, she was denied benefits such as permission to work from home, flexibility in scheduling hours of work and permission for unofficial comp time, and she was held to stricter time reporting requirements. These benefits, which Plaintiff's colleagues continued to enjoy, had also been previously made available to Plaintiff.

11. In February 2009, Plaintiff filed an internal grievance regarding ongoing discrimination, harassment over Family Medical Leave restrictions, and ongoing denial of her requested accommodation for an ergonomic workstation.

12. Between February - April 2009, Plaintiff applied for and received approximately 60 days of full-time Family Medical Leave and Short-Term Disability.

13. After Plaintiff made her requests for Family Medical Leave and Short-Term Disability and requests for accommodation, Plaintiff's supervisor and co-workers began subjecting Plaintiff to a hostile work environment. The hostile work environment consisted of her supervisors, peers, and other employees in the Office of the Secretary refusal to acknowledge or speak to Plaintiff, making negative comments about Plaintiff

and her job performance, and making negative comments to colleagues and prospective employers in other state agencies.

14. In July 2009, Plaintiff was accused of being AWOL and her pay withheld for leaving on a Wednesday after having already worked 40 hours for the week, as she had done prior to the motor vehicle accident and as the other economists had done on a regular basis for at least as long as Plaintiff was employed by Defendants. Plaintiff was told by her supervisor that as a salaried employee (which Plaintiff was not), she was expected to work extra hours without expectation of straight comp time.

15. In July 2009, Plaintiff initiated the Defendant's internal dispute resolution process, complaining of ongoing discrimination and a hostile work environment. The Defendant took no meaningful action to remedy Plaintiff's complaints.

16. After Plaintiff initiated the internal dispute resolution process, the hostility of Plaintiff's work environment continued and increased to include Plaintiff's supervisors, peers, and even top level employees from the Human Resources and Legal Divisions, harassing Plaintiff, giving dirty looks, refusing to acknowledge, speak or work with her, beginning to use or increasing their use of personal fragrance products, unjust discipline and refusal to allow Plaintiff to take her accrued leave and changing her time to AWOL. Plaintiff's immediate supervisor verbally reprimanded her, accused her of incompetence, terminated her temporary salary increase, forced her to vacate her office with functional window and door and turn in all of her laptop equipment. Plaintiff's supervisor began changing her assignments as she went along, holding her to a higher

level of standards than the other economists, and imposing disciplinary work requirements that interfered with Plaintiff's ability to do perform her duties.

17. Plaintiff made formal written requests for accommodation on November 8, 2009, December 11, 2009 and March 14, 2010. She had also made a written request directly to the Department Secretary in October 2009. Requests for accommodation included removal of microwave oven from the Secretary's Office, prohibiting employees from bringing air fresheners or fragrance-emitting devices to work, providing office with functional window and door, permission to work from home when indoor air quality was compromised, and issuing statement to employees requesting voluntary compliance in minimizing or eliminating the use of personal fragrance products. Plaintiff provided appropriate medical documentation of her disability and requests for accommodation. With the exception of providing an air filter and temporarily providing an office with a functional window and door, which office Plaintiff was subsequently forced to vacate again, Plaintiff's requests continued to be denied while the Defendant placed an onerous burden on Plaintiff to prove the existence of the disability and a cause and effect relationship between fragrances and other chemicals and the exacerbation of asthma or MCS.

18. Plaintiff requested an accommodation to work from home to avoid the exposure to offensive chemicals and the hostile work environment. Plaintiff's job duties required very limited face to face interaction with her peers and could have been easily accommodated by allowing Plaintiff to work from home. Plaintiff's request to work from home was denied. Plaintiff is aware of another Senior Economist being allowed to work

from home to accommodate a disability and believes that other state employees are also allowed to work from home.

19. Plaintiff also requested a flex schedule that would enable her to significantly reduce her exposure to personal fragrances and other chemicals at work. Although the requested schedule was within the scope of the Department's own policies, it was denied, while requests from the other economists that were outside the scope of Defendant's regulations were approved.

20. In April of 2010, Plaintiff filed a formal EEOC charge of discrimination.

21. The hostile work environment continued and actually increased after Plaintiff filed her EEOC charge. Plaintiff's immediate supervisor regularly discussed and made negative comments about Plaintiff's confidential personnel matters to Plaintiff's colleagues not only at work but also to her colleagues and prospective employers at other state agencies and local institutions. When Plaintiff would complain about her supervisor's behavior, he began to yell at Plaintiff on a regular basis, causing Plaintiff to fear for her safety, changing her assignments as she went along and making punitive and retaliatory assignments with unreasonable deadlines. Plaintiff made timely amendments to her EEOC charge.

22. On June 21, 2010, Plaintiff had an attorney write a letter to the Taxation and Revenue Department requesting accommodations and requesting an end to the hostile work environment. However, on June 24, 2010, Defendants issued to Plaintiff a verbal reprimand, documenting Plaintiff's complaints about chemicals in the workplace

making Plaintiff ill and her requests for accommodation and stated that Plaintiff was being reprimanded because she was creating additional work for Defendant.

23. Also, on the afternoon of June 29, 2010, Plaintiff's supervisor removed the door to her office thereby exposing Plaintiff to more airborne chemicals. On the morning of June 30, 2010, Plaintiff was also exposed to chemicals from the painting of Plaintiff's designated parking lots. Plaintiff suffered a violent asthma attack that required her to leave work at the direction of her immediate supervisor, but she was found to be AWOL.

24. In July of 2010, Plaintiff received discipline for absences brought on by her disability and the time she had to take off work because of exposure to chemicals at work and the hostile work environment. Defendants began making a paper trail of discipline to terminate Plaintiff.

25. In August of 2010, Plaintiff was served with additional discipline that was unjust and inaccurate.

26. In September 2010, Defendants advertised an opening for the position of Chief Economist. Plaintiff qualified, applied and interviewed for the position. However, another economist had been promoted and given significant raises during a period of statewide wage freezes. He had been pre-selected and groomed for the position and was offered the position, even though he did not meet the minimum requirements for the position.

27. In November 2010, Plaintiff was terminated from the Taxation and Revenue Department.

28. As a result of Plaintiff's termination, Plaintiff has suffered damages in the

form of lost wages, benefits, emotional distress and physical harm.

## COUNT I. RACE DISCRIMINATION

29. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 28 of this complaint with the same force and effect as if set forth herein.

30. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race (Native American) in violation of Title VII and the New Mexico Human Rights Act.

31. The discrimination consisted of subjecting Plaintiff to a hostile work Environment, failing to promote, and terminating Plaintiff.

32. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

## COUNT II. NATIONAL ORIGIN DISCRIMINATION

33. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 of this complaint with the same force and effect as if set forth herein.

34. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her National Origin (Hispanic) in violation of Title VII and the New Mexico Human Rights Act.

35. The discrimination consisted of subjecting Plaintiff to a hostile work Environment, failing to promote and terminating Plaintiff.

36. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

## COUNT III. SEX DISCRIMINATION

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 36 of this complaint with the same force and effect as if set forth herein.

38. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII and the New Mexico Human Rights Act.

39. The discrimination consisted of subjecting Plaintiff to a hostile work environment, failing to promote, and terminating Plaintiff.

40. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

## COUNT IV. DISABILITY DISCRIMINATION

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 of this complaint with the same force and effect as if set forth herein.

42. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability in violation of Title VII, the ADA and the New Mexico Human Rights Act.

43. The discrimination consisted of subjecting Plaintiff to a hostile work environment, failing to promote, refusing to accommodate Plaintiff and terminating Plaintiff.

44. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

## COUNT V. RETALIATION

45. Plaintiff realleges and incorporates by reference all these allegations stated in paragraphs 1 through 44 with full force and effect.

46. Plaintiff had a legally protected right to oppose discriminatory practices in the workplace.

47. Defendants, in retaliation for Plaintiff exercising these rights, subjected

Plaintiff to a hostile work environment, failed to promote and terminated her employment.

48. The actions of Defendants are in violation of Title VII, the ADA and the New Mexico Human Rights Act.

49. As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost wages, benefits and emotional distress and humiliation.

## COUNT VI. TORT CLAIMS ACT

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this complaint with the same force and effect as if set forth herein.

51. Defendants had a duty to Plaintiff to provide a safe working environment free of harmful chemicals.

52. Defendants breached that duty by failing to maintain and operate Plaintiff work site in a safe manner.

53. As a result of Defendants breach, Plaintiff suffered physical harm.

54. Plaintiff provided notice to the Taxation and Revenue Department of her possible Tort Claim.

55. Plaintiff suffered monetary damages as a result of Defendants' failure to maintain and operate a safe working environment.

## COUNT VII. FAMILY MEDICAL LEAVE ACT

56. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 of this complaint with the same force and effect as if set forth herein.

57. Plaintiff applied for and was granted approved FMLA for her disabilities, serious medical condition and her daughter's serious medical condition.

58. Defendants retaliated against Plaintiff for requesting and using FMLA leave.

59. Defendants' actions caused Plaintiff harm in the form of lost wages, benefits and emotional distress.

## JURY DEMAND

60. Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(A) Awarding Plaintiff compensatory damages that would make her whole for all earnings she would have received but for Defendant's discriminatory, retaliatory and unlawful treatment, including, but not limited to, wages, pension, and other benefits;

(B) Awarding Plaintiff the costs for this action;

( C) Awarding Plaintiff damages for her mental anguish, humiliation and emotional distress and physical injury; and

(D)     Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

*Beatrice Lucero*

Beatrice Lucero, Ph.D
62880 W. La Salle Road, #181
Montrose, CO 81401
(970) 275-5254
Plaintiff, Pro Se